IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD G. SETO and ROSEMARY SETO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:10-cv-00505 |
| STATE FARM INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

In anticipation of trial, Defendant has filed three (3) Motions in Limine. The Motions have been fully briefed and are ready for disposition. The Motions will be addressed seriatim.

<u>Motion in Limine to Preclude Evidence of Claim-Handling (Document No. 39)</u>

Pursuant to Fed. R. Evid. 401, 402, and 403, Defendant seeks to exclude evidence of alleged bad faith, including its claim-handling, investigations and handling of coverage, involving the two fires of undetermined cause that occurred in Plaintiffs' home on December 24, 2008 and March 2, 2009.

On January 11, 2012, the Court granted Defendant's Motion for Partial Summary ruling that, as a matter of law, Plaintiffs had failed to demonstrate that there were genuine issues of material fact that State Farm acted in bad faith. The only remaining issue for the fact-finder, therefore, is whether Defendant breached the parties' contract when it failed to pay additional benefits under the policy.

The Court finds that evidence of Defendant's handling of Plaintiffs' claims is not admissible because it is not relevant to determining whether Plaintiffs are entitled to additional benefits under the terms of the Policy. Further, the Court finds that the probative value of any

evidence of how Defendant handled Plaintiffs' claim is substantially outweighed by its danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed.R.Evid. 403.

Accordingly, this Motion in Limine is **GRANTED** and any evidence of Defendant's alleged bad faith, including its claim-handling, investigations and handling of coverage, involving the two fires of undetermined cause that occurred in Plaintiffs' home on December 24, 2008 and March 2, 2009, will not be permitted.

Motion in Limine to Preclude Evidence of Additional Living Expenses (Document No. 41)

As part of their breach of contract claim, Plaintiffs are seeking Additional Living Expenses ("ALE") for the time period during which they resided in Florida - from April 2009 to February 2010. Fact discovery closed in this case on November 30, 2010. To date, the only documentation submitted to State Farm regarding these Florida living expenses are the first four pages of a five-page lease, which does not contain the signature page, and copies of twelve (12) deposit slips, which do not have any information which identifies the Plaintiffs as the payers of the deposited amounts.

Defendant argues that because the Court stated in its Memorandum Opinion in which it granting partial summary judgment on the bad faith claim that "Plaintiffs have simply failed to produce sufficient documentation to support their claim for additional ALE benefits," that Plaintiffs should be precluded from introducing evidence of ALE at trial. Plaintiffs respond that only their bad faith claim was dismissed as a matter of law and it remains for the jury to determine whether Defendant has breached the parties' contract for refusing to pay additional ALE benefits.

2

The sole issue before the Court at the summary judgment stage was whether Defendant had acted in bad faith when it denied Plaintiffs' claim for ALE benefits. The Court did not rule as a matter of law that Plaintiffs' had failed to produce sufficient documentation to support their breach of contract claim. With that said, however, Plaintiffs will not be allowed to introduce any documentary evidence at trial to establish alleged additional living expenses which has not heretofore been produced to Defendant. Accordingly, this Motion in Limine is **GRANTED IN PART and DENIED IN PART.**

<u>Motion in Limine to Preclude Evidence of Replacement Cost Damages (Document No. 43)</u>

As part of their breach of contract claim, Plaintiffs contend that they are owed "Replacement Cost" damages. The Loss Settlement provision of the Policy at issue specifically provides that when a dwelling is damaged or destroyed, Defendant will pay replacement / repair costs as follows:

(1) **until actual repair or replacement is completed**, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

(2) **when the repair or replacement is actually completed**, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, which is less;

(3) **to receive any additional payments on a replacement cost basis**, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; **and**

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL - Building Ordinance or Law Coverage.

Homeowners Policy, Section I - Loss of Settlement, Coverage A - Dwelling, 1.A1a (1) - (4) (emphasis added).  Defendant contends that Plaintiffs are precluded from seeking replacement / repair costs under the clear terms of the policy because Plaintiffs have failed to replace, rebuild or repair the subject dwelling.  Defendant has paid to Plaintiffs total benefits of approximately $384,000.00, which includes, *inter alia*, $190,980.00 for the estimated "actual cash value of the dwelling.

Plaintiffs respond that only Paragraph a(1) of the Policy governs this issue as "Plaintiffs have been unable to repair or replace their home because they still haven't even received the actual cash value for their home.  This is because the parties disagree as to what the actual cash value is.  As a result, the Setos have been unable to enter into a contract with a builder to replace / repair their home."  Br. at 2.  In support of their position, Plaintiffs rely upon *Ferguson v. Lakeland Mutual Insurance Company*, 596 A.2d 883 (Pa. Super. 1991), a case in which the Pennsylvania Superior Court struck down as void against public policy a provision which required the insureds to advance the cost of replacement with no guarantee that they would be reimbursed.

The Court finds, however, that the case *sub judice* is distinguishable from *Ferguson* for a number of reasons.  The insurer in *Ferguson* had denied liability; thus, the insured "could have only received replacement value . . . after expending the replacement or repair funds and obtaining a judicial determination concerning liability."  As the trial court in *Rotell v. Erie Ins. Group*, 53 Pa.D. & C. 4th 533, 544 (Pa. Com. Pl. 2001), noted,  for a plaintiff to prevail under the *Ferguson* analysis, the following elements are necessary:  "(1) insurer's denial of  liability; (2) insureds' "unsavory" choice of either accepting actual cash value or expending a large sum in replacement costs without a guarantee of reimbursement; and (3) any payment of replacement

value by insurer hinges on either expending funds or obtaining a judicial determination of liability."

In the instant case, Defendant has admitted liability and has paid Plaintiffs total benefits of approximately $384,000.00, which includes $190,980.00 for the estimated "actual cash value" of the dwelling; $162,700.00 for their personal property; and $30,425.00 for additional living expenses. Defendant did not condition additional replacement cost payments upon receiving a judicial determination of liability; rather it conditioned the benefits upon Plaintiffs' compliance with the stated Policy procedures. Thus, unlike the claimants in *Ferguson*, Plaintiffs' replacement benefits were guaranteed to the extent that Plaintiffs demonstrated that they had replaced or repaired the damaged property.

The Policy at issue clearly states that if the homeowners choose not to replace or repair their destroyed / damaged dwelling, then they are limited to recovering "Actual Case Value" of the subject dwelling, i.e., the "Replacement Cost Value," less depreciation. In this case, Plaintiffs admit that they did not replace, rebuild, or repair the subject dwelling. Rather, it is undisputed that after receiving the $190,000.00 from Defendant, Plaintiffs razed the dwelling and sold the property for $15,000.00. Accordingly, the Court finds that Plaintiffs are not entitled to "Replacement Costs" under the clear and unambiguous terms of the Policy.

This Motion in Limine is therefore **GRANTED** and Plaintiffs are precluded from asserting a claim for Replacement Costs at the time of trial and, as a result, are also precluded from proffering evidence of Replacement Cost damages at trial.

So **ORDERED** this 21st day of May, 2012.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Charles C. Gentile, Esquire
Gentile Law Offices
Email: charles.c.gentile@gmail.com

Noah Geary, Esquire
Email: noahgeary@ngearylawoffices.net

Daniel L. Rivetti, Esquire
Robb Leonard Mulvihill LLP
Email: drivetti@rlmlawfirm.com